Williams, C. J.
The plaintiffs in error contend that distribution according to the judgment of the circuit court is erroneous: (1) In directing payment of any part of the fund to the defendants in error, the First National Bank of Carding-ton, and Sperry and Wonnstaff; or if not to that extent, then (2) in awarding them the full amount of their judgments out of the fund in controversy.
1. It is contended that the above named defendants in error, are not entitled to any share of the fund, because the notes upon which their judgments were recovered were executed in the individual names of the makers, George P. Stiles and Abram Stiles, without subscribing the- firm name, or otherwise indicating the existence of any partnership relation between them, or intention to bind the firm; and the judgments were rendered in the same way; from which it is argued that these defendants in error must be treated as the individual creditors of George P. and Abram Stiles, and excluded from participation in the fund, under the familiar rule which gives firm creditors of an insolvent partner *459 ship priority, in the distribution of the firm, effects, over the individual creditors of its members. It is conceded, however, that the notes were given in partnership transactions, with the intention of binding the firm, and for considerations which went to its benefit; and it seems indisputable that they created partnership obligations. It is well settled that a partnership debt may be created by the execution of a note by all of the members of a firm, as fully as by one member subscribing the partnership name. Chitty on Bills, pp. 52, 53; Woolen Company v. Juillard, 75 N. Y., 535; Mix v. Shattuck, 50 Vt., 421; Austin v. Williams, 2 Ohio 61. The adoption of a firm name is largely for convenience in making contracts binding on all the members by its use, thus obviating the necessity of securing the individual assent of, and execution by each of the partners, which, when the members are numerous might not only be inconvenient, but sometimes impracticable.
But, it is contended that, as the individual ■creditors have priority of right to the individual property of the partners, as against the partnership creditors, the former cannot, at the same time, be allowed the advantages, of partnership creditors, and be thus enabled to share equally with creditors of both classes; and that by putting their notes in judgment against George P. Stiles and Abram Stiles, without any designation of their partnership character, or reference to their partnership relation, the Bank and Sperry & Wormstaff have conclusively elected to stand as individual, and not as partnership creditors. It is not claimed that they have sought satisfaction of their judgments out of any individual property of the partners, nor that there is, or was *460 any property of that kind which could be reached. The judgments follow the notes, and rendering-judgments in that form did not extinguish the character of the notés as partnership obligations, nor defeat their legal effect as such. Courts of equity look behind the forms of judgments and inquire into the nature of the demands on which they are founded, and the relations of the parties, when necessary to the preservation of equitable rights; so that, if from the form of the notes as executed, a presumption should arise that they were intended to create an individual obligation of the makers, and nothing more, such presumption is not conclusive, but it may nevertheless be shown that they were in fact given for considerations which went to the use of the firm, and which were parted with on its credit, and thus show that they represent partnership debts; and there can be no reason why that may not be done after judgment rendered on them., as well as before, especially as against other creditors, in a proceeding in equity involving the right, as between the creditors, of participation in a fund produced by the partnership property. The rights of the creditors, on that state of facts, against the firm, are in no respect different from what they would be if the firm name were attached to the notes; and an execution upon the judgments must, therefore; be as available against the partnership property. Whether, if the members of this firm were possessed of individual estates which these defendants in error were endeavoring- to have applied to the satisfaction of their judgments, they would be denied participation in the partnership effects, or put to an election as to the fund they would pursue, is a question not presented; there is nothing in the case to *461 indicate an intention on their part to seek satisfaction of their judgments out of any individual estate of either of the partners, or abandon any rights against the partnership effects; on the contrary, their proceedings on their judgments were promptly and exclusively against the partnership property, and on those of the Bank, prior in order of time to any lien acquired by any other creditor.
2. The -method of making- distribution among the execution creditors entitled to share in the fund is controlled by section 5382, of the Revised Statutes, which provides that:
“When two or more writs of execution against the same debtor are sued out during the term in which judgment was rendered, or within ten days thereafter, and when two or more writs of execution against the same debtor are delivered to the officer on the same day, no preference shall be given to either of such writs; but if a sufficient sum of money be not made to satisfy all executions, the amount shall be distributed to the several creditors in proportion to the amount of their respective demands; in all other cases the writ of execution first delivered to the officer shall be first satisfied; and the officer shall indorse on every writ of execution the time when he received the same; but nothing herein contained shall be so construed as to affect any preferable lien which a judgment on which execution issued has bn the lands of the judgment debtor.”
The general rule established by that section is, that as between execution levies, that of the writ first delivered to the officer shall have priority; and subsequent levies shall have precedence in the order in which the writs are received *462 by the officer. This is in accordance with the general principle which accords the preference to the diligent creditor, over one less diligent. But to this general rule the statute has prescribed two qualifications; one is to the effect that there shall be no priority as between executions sued out during the term of the court in which the judgments are rendered or within ten days after the term; and the other applies the same rule of equality as between all executions that are delivered to the officer on the1 same day. The first of these qualifications governs the ease before us; and it is clear the equality of right as between the executions there referred to, relates to those issued on judgments rendered in the same court and at the same term. Executions issued from different courts, though on judgments rendered at the same time, and during corresponding terms, do not come within the provision, but take priority,as between each other, from the time of their delivery to the officer. But when several executions issued on judgments rendered in the same court and ■at the same term are delivered to the officer during-that term, or within ten days thereafter, they are, by the express terms of the statute, made equal in right, and that equality is not disturbed by the intervention between the judgments or levies of another lien which becomes superior to the judgments or levies that are subsequent thereto. The statue makes no exception to the rule it prescribes with respect to such executions, on account of intervening, liens, but includes all executions against the same debtor sued out and delivered to the officer at the term of the rendition of the judgment, or within the designated time thereafter; and in plain and unequivocal terms *463 forbids any preference between them on any account, and distinctly requires that, if a sufficient amount is not made to satisfy all the writs, it shall be distributed to the execution creditors in proportion to the amounts of their several demands. When different creditors place executions in the hands of the officer on the same day, the last one doing so is not regarded as so lacking in diligence as to postpone his writ until the first one delivered to the officer shall be satisfied; and there is no manifest impropriety in extending the same rule of equality to creditors who recover judgments against the same debtor at the same term of court and cause executions to be issued thereon and levied during the term, or within a short time thereafter. A similar rule has been adopted by another provision of the statute which denies priority to liens obtained by filing transcripts of justices’ judgments with the clerk of the court during vacation, over judgments rendered at the next ensuing term. Revised Statutes, section 5377. Babbett v. Morgan, 31 Ohio St., 273. A like principle is also adopted in that provision of the statute which makes judgments recovered at the same term of the court equal as liens on the debtors real estate situated in the county where the judgment is rendered. The race between creditor’s generally begins with the apparent or actual insolvency of the debtor; and when several judgments are procured at the same term of the court, followed by executions, the insolvency of the debtor is usually obvious or rapidly approaching; and in such case, equality among creditors of equal merit works no injustice. But whatever may have been the reason for the adoption of the statutory provision under consideration, the courts are not at liberty to disre *464 gard it; and when applied to the case in hand, it requi res a distribution of the fund involved, different from that ordered by the judgment below. That distribution should be as follows: After the payment of the costs of the action in the courts below, and the costs of the sale, as ascertained by the circuit court, there should first be set aside out of the fund, the amount of the two executions issued on the judgments recovered by the Oardington Bank in the Ashland county common pleas on the 20th day of September, 1893; those executions being the first levied, and superior in right to the executions issued from Franklin county and levied the next day. Next, there should be deducted from the remainder of the fund, the amount of the executions issued on the judgments recovered by the Bank, and Sperry & WormstafE, in the Franklin county common pleas on the 21st day of September, 1893; they being superior in right to the executions sued out on the judgments rendered on the following day in the Ashland county common pleas, in favor of the plaintiffs in error. This amount should be set aside for distribution as hereafter directed. The balance of the fund then remaining being insufficient to satisfy the executions of the plaintiff in error, issued on their judgments recovered in the Ashland county common pleas, which are next in order of priority, must be added to the amount set aside for the two Ashland county executions of the Bank, and the aggregate amount they produce applied toward the satisfaction of all these Ashland county executions, in proportion to their respective amounts; and the amounts set aside for the Franklin county executions of the Bank and Sperry & WormstafE, must be distributed in like proportions among all *465 the executions that were sued out on judgments rendered at the same term of the court of common pleas of that county, and levied during that term. This distribution is in accordance with the rule laid down in Babbitt v. Morgan, supra, and with a recent decision of this court in the unreported case of the Carriage Company v. Ford, from Licking county. The judgment of the circuit court must therefore be reversed, and judgment rendered for the plaintiffs in error, in accordance with this opinion.
Judgment accordingly.